**United States District Court**
For the Northern District of California

1

2   United States of America,        )
                                      )
3                   Plaintiff,        )
                                      )
4        v.                           )        No. CR-10-0785 DLJ
                                      )
5   Ricardo Vasquez Del Gadillo       )
                                      )
6                                     )
                                      )
7                   Defendant.        )
    _____)

8

9        On April 15, 2011, the Court heard argument on

10  defendant's motion to dismiss the indictment.  Joseph Audal

11  appeared on behalf of the government; Jerome Matthews appeared

12  for defendant.  Having considered the arguments of counsel, the

13  papers submitted, the applicable law, and the record in this

14  case, the Court hereby grants defendant's motion to dismiss the

15  indictment.

16  **I.   BACKGROUND**

17       Defendant is a 41-year-old citizen of Mexico. Del

18  Gadillo entered the United States, without permission, in 1988.

19  He met Veronica Garza ("Garza") in April, 1991. Declaration of

20  Veronica Garza "Garza Decl.," ¶ 2. Garza was and has always

21  been a citizen of the United States. Del Gadillo and Garza grew

22  very fond of each other and began a relationship.

23       On December, 1992, Garza gave birth to their first

24  child, Ricardo Vazquez. On April 27, 1994, Garza gave birth to

25  their second child, Jessica Vazquez. At the time, Del Gadillo

26  was working full-time and was the family's sole provider. The

27  family continued to live at Del Gadillo's home in Union City.

28  On February 9, 1995, Del Gadillo and Garza were married in a

    civil ceremony in Fremont, California. Garza Decl., ¶ 3. On

**United States District Court**
For the Northern District of California

March 18, 1996, Garza gave birth to their third child, Louis Felipe Vazquez. Del Gadillo continued to work full time and remained the sole financial provider for his young family.

In August 26, 1996, Defendant was convicted of assault with a firearm, in violation of California Penal Code § 245(a)(2), and was sentenced to three years probation with the condition that he serve 195 days in jail. See Declaration of Jerome E. Matthews ("Matthews Decl."), Exhibit ("Ex.") A. Shortly thereafter, Immigration and Naturalization Service ("INS") began the process to remove Defendant from the United States on the grounds that he was in the country without being inspected and that he was convicted of using a firearm in violation of California law. See Matthews Decl., Ex. B.

On October 4, 1996, defendant appeared before an Immigration Judge ("IJ") in what is referred to as a "removal hearing."  At the conclusion of that process the IJ ordered Defendant removed to his native country, Mexico. See Matthews Decl., Ex. E. Although the forms regarding defendant available to the IJ at the hearing indicated that defendant had a United States Citizen spouse and United States Citizen children, the IJ did not discuss with defendant the impact that fact might have had upon his immigration situation. On October 5, 1996, Defendant was removed. Government's (Govt.'s) Exh. A.

On or about May 2010, Defendant re-entered the United States without permission and was residing in the Northern District of California. On October 29, 2010, a federal grand jury for the Northern District of California returned a one-count Indictment against Defendant, charging him with being

**United States District Court**
For the Northern District of California

1  a previously deported alien who was found in the United States

2  without the consent of the Attorney General or the Secretary of

3  Homeland Security, in violation of 8 U.S.C. § 1326.

4  **II.   LEGAL STANDARD**

5       Under 8 U.S.C. § 1326(d), in order to sustain a

6  challenge to a prior deportation order, the defendant must

7  demonstrate (1) exhaustion of administrative remedies; (2) that

8  the challenged deportation proceedings improperly deprived the

9  defendant of the opportunity for judicial review; and that (3)

10  the entry of the deportation was fundamentally unfair. The

11  government concedes that under the circumstances defendant is

12  deemed to have exhausted his administrative remedies.  They

13  also concede that the deportation proceedings deprived

14  defendant of the opportunity for judicial review.

15       The issue therefore is whether defendant can show that

16  the entry of deportation was fundamentally unfair.  A

17  deportation order is "fundamentally unfair" if the defendant's

18  due process rights were violated in the deportation proceeding

19  and he was prejudiced by the defects. <u>See</u> <u>United States v.</u>

20  <u>Ramos</u>, 623 F.3d 672, 680 (9th Cir. 2010) (citing <u>United States</u>

21  <u>v. Pallares-Galan</u>, 359 F.3d 1088, 1095 (9th Cir. 2004)).

22       To prove prejudice, the alien must prove that there was

23  a plausible ground for relief available but for the deprivation

24  of his rights. <u>See</u> <u>United States v. Leon-Leon</u>, 35 F.3d 1428,

25  1432 (9th Cir. 1994).

26  **III.  DISCUSSION**

27       Because of his United States Citizen wife, defendant

28  might have been able to seek relief from deportation.

**United States District Court**
For the Northern District of California

1   Normally, the fact that defendant had been convicted of a crime

2   of moral turpitude would render him ineligible for this relief.

3   However, a person who is ineligible because of a crime of moral

4   turpitude may still get a waiver of ineligibility if he can

5   demonstrate extreme hardship to a United States Citizen spouse

6   or children. INA § 212(a)(2)(A)(I).

7          The burden is on the defendant to make a *prima facie*

8   showing of prejudice.  See <u>United States v. Gonzalez-Valerio</u>,

9   342 F.3d 1051, 1054 (9th Cir. 2003).  At this stage of the

10  proceedings, to collaterally attack the deportation, defendant

11  need not show that he actually would have been granted the

12  relief, he need only show a " 'plausible' ground for relief

13  from deportation." <u>United States v. Arrieta</u>, 224 F.3d 1076,

14  1079 (9th Cir. 2000).

15         Under Section 212(h), the "Attorney General may waive

16  removal if deportation would cause extreme hardship to

17  relatives of the alien who are U.S. citizens or permanent legal

18  residents." <u>United States v. Becerril-Lopez</u>, 541 F.3d 881, 886

19  (9th Cir. 2008) (citing 8 U.S.C. § 1182(h)(1)(B)) (emphasis

20  added). "Extreme hardship requires great actual or prospective

21  injury or extreme impact on the citizen family member, beyond

22  the common results of deportation." <u>United States v.</u>

23  <u>Moriel-Luna</u>, 585 F.3d 1191, 1199 n.5 (emphasis added).

24         The Ninth Circuit has held that it "will find prejudice

25  only after a clear, detailed demonstration that the defendant

26  provided 'noneconomic familial support' or 'something more'

27  than financial support." <u>Becerril-Lopez</u>, 541 F.3d at 886

28  (emphasis added).

4

**United States District Court**
For the Northern District of California

Defendant's motion speaks about his eight children and emotional and financial difficulties to them. Defendant has included for example a letter from his daughter Jessica's current high school counselor attesting to emotional issues for the daughter based on Del Gadillo's current incarceration. He also speaks to the emotional effects currently on one of his youngest children.

The government argues first that the only relevant facts are those which were in existence at the time of defendant's deportation in 1996. For support for this proposition the government cites United States v. Muro-Inclan, 249 F.3d 1180, 1185 (9th Cir. 2001)(to demonstrate prejudice, defendant "must show that there was a 'plausible ground for relief from deportation' if he had sought such relief *at the time* of his underlying deportation hearing."(emphasis added)).  The government also relies Muro-Inclan, to assert that defendant has not made a sufficient showing of extreme hardship to demonstrate as a matter of law that he had a plausible grounds for relief.

Defendant in turn relies on United States v. Arrieta, *supra.,* to support his argument that he has demonstrated sufficient hardship to his United States Citizen spouse and children beyond mere economic hardship that he has raised a plausible grounds for relief.

The facts of this case are closer to Arrieta than to Muro Inclan.  In Muro-Inclan the wife submitted a declaration to the effect that she needed her husband's assistance to raise their children.  The Ninth Circuit found this

**United States District Court**

For the Northern District of California

1   declaration insufficient, but the Ninth Circuit was no doubt

2   influenced by the fact that defendant had been incarcerated

3   for 10 of the preceding 13 years and so already had not been

4   able to substantially assist his family.  The facts of this

5   case are more like those in <u>Arrieta</u>. In <u>Arrieta</u>, the

6   defendant's mother submitted a declaration outlining the

7   "critical role" that Arrieta played assisting her in raising

8   his younger siblings, with both financial and practical

9   support.  While the materials submitted here by Del Gadillo

10   are not quite as detailed about the non-economic support Del

11   Gadillo lavished on his family prior to his deportation, he

12   was the sole financial provider for his family, he lived at

13   home with his wife and three infant children and there is

14   nothing in the record to indicate that he was anything other

15   than an involved father at that point.  Moreover since he

16   returned to the United States, the record is clear that he

17   took an active role in parenting his children, so the Court

18   may infer that this was the role Del Gadillo played in the

19   family prior to his deportation.

20       Focusing solely on time period of his deportation,

21   Jessica was two and a half years old.  Veronica Garza's

22   declaration states that when Del Gadillo was deported Jessica

23   cried all the time and had difficulty sleeping.  The family

24   also suffered financial hardships.  Garza did not have a job.

25   Following Del Gadillo's deportation, Garza lived off of

26   Welfare.  She received $541 a month, $300 of which she had to

27   pay to her mother for rent.

28       While the financial hardship in and of itself would not

United States District Court

For the Northern District of California

1   have been sufficient, the Court finds that when combined with

2   the significant parental role of the defendant and the

3   emotional toll of breaking up the family unit, the

4   circumstances are sufficient to constitute a plausible showing

5   of extreme hardship as set out in <u>Arrieta</u>. ("'preservation of

6   family unity' may be a central factor in an extreme hardship

7   determination.") <u>Arrieta</u>, 224 F.3d at 1082, citing <u>Cerillo-</u>

8   <u>Perez v. INS</u>, 809 F.2d 1419, 1423 (9th Cir. 1987). Defendant

9   has met his burden of showing that his due process rights were

10  violated in his prior deportation proceeding.  As such the

11  government cannot prove one of the elements of a violation of

12  18 U.S.C. § 1326 alleged in the Indictment and the Indictment

13  must be dismissed.

14

15  **IV.   CONCLUSION**

16      For the foregoing reasons, defendant's Motion to Dismiss

17  the Indictment is GRANTED.

18

19

    IT IS SO ORDERED.
20

21  Dated: April 21,2011

22                              D. Lowell Jensen
                                United States District Judge
23

24

25

26

27

28

7